**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| JUNIOR LARRY HILLBROOM, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BARRY J. ISRAEL, an individual; and KEITH A. WAIBEL, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 1:10-CV-00031 <br><br> **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ISRAEL'S MOTION TO DISMISS** |

Defendant Barry John Israel ("Israel") moves the court to dismiss the case against him under Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction, under Rule 17(a)(1) for lack of standing, under Rule 19(a) for failure to join necessary and indispensable parties not subject to the Court's jurisdiction, under Rule 12(b)(3) for improper venue, under Rule 12(b)(6) for failure to state a claim, and on grounds that the claims are barred by the statute of limitations, *res judicata* and collateral estoppel. (*See* Notice of Motion and Motion by Defendant Barry J. Israel to Dismiss Complaint (hereafter "Israel Motion"), Dkt. No. 27). Plaintiff Junior Larry Hillbroom ("Junior") opposes the Israel Motion. (Opposition, Dkt. No. 39.) Israel has filed a reply. (Reply, Dkt. No. 69.)

For the reasons stated below, the Israel Motion is hereby GRANTED for lack of personal jurisdiction. The Court therefore does not consider Israel's other asserted defenses.

//

### I. Background

Plaintiff Junior Hillbroom ("Junior") complains against Israel and co-Defendants David Lujan ("Lujan") and Keith Waibel ("Waibel") alleging legal malpractice, negligence, breach of fiduciary duty, fraud, and RICO violations (18 U.S.C. § 1961 *et seq.*). (Complaint, Dkt. No. 1). Israel and Lujan were among the lawyers who represented Junior between 1995 and 2000 in his claims in the probate court of the Commonwealth of the Northern Mariana Islands ("CNMI") to a share of the $550-million estate of Larry Hillblom ("Hillblom"). (Compl. ¶¶ 4, 22.) Hillblom, a co-founder of DHL Worldwide Express, died in a plane crash in 1995. (*Id.* ¶ 16.) At the time of Hillblom's death, Junior was eleven years old and living in Palau. (*Id.* ¶ 17.) The CNMI probate court determined that Junior was a pretermitted child of Hillblom's, and he was awarded a 15 percent share of the estate. (*Id.* ¶ 22.) During the pendency of the CNMI probate case, guardianship cases for Junior were opened in the CNMI and in Guam, where Junior had been relocated with his grandparents. (*Id.* ¶¶ 20, 26.) As part of the final settlement, Junior's attorneys were awarded a 38 percent retainer contemplating services that Junior would need in order to recover and monetize his portion of the estate's assets. (*Id.* ¶ 25). Junior alleges that soon after the close of the CNMI probate case in April 2000, Israel and Lujan engaged in tortious legal malpractice, fraud and misrepresentation to secure an increase in the retainer from

38 to 56 percent, "in direct contravention of the CNMI Probate Court's orders." (Opp. at 13.)[1] The 56 percent agreement was backdated to April 15, 1999. (Compl. ¶ 43.)

From 1997 to 2002, Israel was a resident of the CNMI. (Opp. at 8–9, 15.)[2] He had two apartments, a local driver's license, a bank account, and a car. (*Id.*) Israel filed tax returns as a CNMI resident starting in 1997. (*Id.* at 9.) In a divorce decree issued in June 2001, the CNMI Superior Court found that Israel had been residing in the CNMI for more than two years. (*Id.* at 19.) Israel moved to Thailand in 2002 and then to Vietnam in 2003. (*Id.* at 28.) Israel now resides in Vietnam. (*Id.* at 27.)

Junior asserts that he did not become aware that Israel and the other defendants were stealing money from him until an FBI agent revealed the fraud to him at a meeting in San Francisco on November 10, 2006. (Compl. ¶ 51).

On October 15, 2007, Israel executed a tolling agreement that tolled the statute of limitations on all of Junior's claims from September 6, 2007, until March 6, 2009. (Compl. ¶ 52). Junior subsequently filed suit against Israel and Lujan in California, where the cases were dismissed for lack of personal jurisdiction. (Compl. ¶¶ 14–15).

### II.   Standards

A motion to dismiss for lack of personal jurisdiction is governed by Rule 12(b)(2) of the Federal Rules of Civil Procedure. "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."

---

[1] Page references to docketed pleadings utilize ECF's automated pagination.
[2] Plaintiff's Opposition cites to Defendant Israel's "Declaration . . . in Support of Motion to Dismiss," Dkt. No. 28. Together with his motion Israel submitted a declaration and twenty-five attached exhibits. The Court does not cite to Israel's extrinsic materials and does not rely on them. Plaintiff's objections to Israel's declaration and attached exhibits (*see* Dkt. No. 42) are therefore moot.

*Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In evaluating the defendant's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

Where, as here, the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Unocal*, 248 F.3d at 922 (quotation marks omitted). The court must accept uncontroverted allegations contained within the plaintiff's complaint as true, and must resolve conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *See*, *e.g.*, *Boschetto*, 539 F.3d at 1015. However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Circus Enterprises, Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (quotation marks omitted).

A district court may exercise personal jurisdiction over a nonresident defendant, in the absence of an applicable federal statute, if the state long-arm statute permits it and the exercise of jurisdiction does not violate federal due process standards. *See*, *e.g.*, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). For purposes of jurisdictional analysis, the CNMI is treated as a state. *See Dyack v. Commonwealth of the Northern Mariana Islands*, 317 F.3d 1030, 1037 (9th Cir. 2003); *also* 28 U.S.C. 1332(e). The CNMI's long-arm statute "subjects both residents and nonresidents to the Court's jurisdiction to the fullest extent allowable under the due process standards of the U.S. Constitution." *Bank of Saipan v. Superior Court,* 2001 MP 5 ¶ 38, *referring to* 7 CMC (N. Mar. I. Code) § 1101 *et seq.* The inquiry, therefore, reduces

to whether exercise of personal jurisdiction over Israel would comport with federal constitutional due process.

The due-process issue is whether defendants' contacts with the forum are of such quality and nature that they could reasonably expect "being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Due-process concerns are satisfied when personal jurisdiction is asserted over a nonresident defendant who "has certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) (quotation marks omitted). The court "must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1207 (9th Cir. 2006).

### III. Analysis

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. The court considers each in turn.

#### A. *General jurisdiction*

To support a finding of general jurisdiction, the plaintiff must demonstrate that the defendant's activities in the forum state are "substantial" or "continuous and systematic." *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 (9th Cir. 1984) (citing *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). The exercise of general

jurisdiction "allows courts to hear *any case* involving a particular defendant." *King v. Am. Family Mut. Ins. Co.,* 632 F.3d 570, 579 (9th Cir. 2011) (emphasis added). Because a finding of general jurisdiction based on substantial in-forum activities would force a party to defend "on causes of action arising from dealings entirely distinct from those activities," *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 318 (1945), the "standard for general jurisdiction is high[.]" *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1169 (9th Cir. 2006).

There is no question that Israel's conduct and connection with the CNMI from 1997 to 2001 are such that *at that time* he should have "reasonably anticipate[d] being haled into court there" on any action. *World-Wide Volkswagen,* 444 U.S. at 297. However, ten years passed between the time of the alleged tortious conduct and the filing of this lawsuit. Israel has had no systematic and continuous contact with the CNMI since 2001. In examining facts to support general jurisdiction, courts typically reach back no more than seven years prior to filing of the complaint. *Fru-Con Const. Corp. v. Sacramento Municipal Utility Dist*., 2007 WL 2384841, at *8 (E.D. Cal. Aug. 17, 2007) (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 569 (2d Cir. 1996) (survey of case law on period for assessing minimum contacts), and *Slurry Sys., Inc., v. Berminghammer Found. Equip.,* 2005 WL 2240064, *5 (N.D. Ind. Sept. 14, 2005) (insufficient contacts over preceding seven years)). The instant complaint was filed in 2010, nine years after Israel moved away from the CNMI and ceased meaningful contacts with the forum. To make Israel answer in the CNMI today for any and all actions that arose long ago when he maintained substantial activities there, regardless of whether those actions were related to the forum, would not comport with the notions of "fair play and substantial justice" that underpin personal jurisdiction. *Int'l Shoe,* 326 U.S. at 320. Therefore, the court finds that it lacks general jurisdiction over Israel.

B.  *Specific Jurisdiction*

In the absence of general jurisdiction, a court may exercise specific jurisdiction over a nonresident defendant "if his or her less substantial contacts with the forum give rise to the cause of action before the court."  *Unocal,* 248 F.3d at 923.  The Ninth Circuit applies a three-part test to analyze a claim of specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added).   Plaintiff bears the burden on the first two prongs.  *Boschetto*, 539 F.3d at 1016.  "If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable."  *Id*. (quotation marks omitted).  However, if the plaintiff "fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."  *Id*.  The court considers both "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts."  *Yahoo!,* 433 F.3d at 1210.  "A strong showing on one axis will permit a lesser showing on the other.  A single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state."  *Menken v. Emm,* 503 F.3d 1050, 1058 (9th Cir. 2007) (citing *Yahoo!,* 433 F.3d at 1210).

Purposeful availment and purposeful direction are "two distinct concepts." *Schwarzenegger,* 374 F.3d at 802. Purposeful-availment analysis is most often used in suits sounding in contract, while purposeful direction typically applies in actions sounding in tort. *Id.* The first prong of specific-jurisdiction analysis "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination of both." *Yahoo!,* 433 F.3d at 1206.

The purposeful-availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984), and *World-Wide Volkswagen,* 444 U.S. 286 at 299). The court evaluates four factors: prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Slaughter v. Van Cleve,* 2007 U.S. Dist. LEXIS 90947, *10 (C.D. Cal. Dec. 10, 2007) (citing *Burger King,* 471 U.S. at 478–79).

When evaluating purposeful direction, the court applies an "effects" test based on *Calder v. Jones,* 465 U.S. 783 (1984). *See Yahoo!,* 433 F.3d at 1206; *see also Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002). The effects test imposes three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!,* 433 F.3d at 1206. The "brunt" of the harm "need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.* at 1207. In purposeful-direction cases, it is not required that "all (or even any) jurisdictionally relevant

effects have been caused by wrongful acts." *Id.* To survive the effects test, a plaintiff must sustain its burden on each of the test's three parts. *Schwarzenegger,* 374 F.3d at 807 n.1.

Israel asserts that the effects test must be applied in this case because it lies in tort. Dkt. No. 27, at 16–17. This Court agrees. In *Menken v. Emm,* 503 F.3d 1050 (9th Cir. 2007)*,* the district court dismissed for lack of personal jurisdiction a complaint alleging the tort claims of negligence, interference with contractual relations, and civil extortion. *Id.* at 1054. While the district court applied the three-prong test for specific personal jurisdiction, it did not clearly indicate that it employed the effects test for the first prong. *Id.* at 1059. The Ninth Circuit reanalyzed the facts using the effects test and reversed the judgment below. *Id.* at 1059–61. It found that when a "cause of action arises primarily in tort . . . *Calder'*s 'effects test' is the proper framework for the first prong's purposeful availment and direction analysis." *Id.* at 1059. Junior's claims similarly lie in tort. Therefore, this Court applies the effects test.

As to the first part of the effects test, the Complaint directly alleges that Israel and his co-defendants intentionally kept Junior ignorant of their actions to raise the contingency fee from 38 percent to 56 percent against Junior's interests and without informing Junior. Dkt. No. 1, ¶ 40–42. Thus Junior has sufficiently alleged intentionality.

To satisfy the second part of the effects test, it must be alleged that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole,* 303 F.3d at 1111 (quoting *Bancroft & Masters v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000)). It has not been alleged that at any time – let alone any *relevant* time – Junior was a resident of the CNMI. At the time of Larry Hillblom's death, Junior was "a boy living in poverty with his mother in the Republic of Palau." (Compl. ¶ 17.) In 1998, after approval of the 38 percent retainer agreement, Israel and Lujan moved Junior and

his grandparents from Palau to Guam. (Compl. ¶¶ 24, 26; Opp. at 11.) Junior was present at a court hearing on Guam on April 12, 1999. (Compl. ¶ 32.) In 2000, Junior was relocated to California for medical treatment. (Compl. ¶ 39; Opp. at 13.) Subsequently, he "transitioned from medical care to school in the United States . . ." (Compl. ¶ 39.) Presently he is a resident of Idaho. (*Id.* ¶ 1.)

Plaintiff tries to get around this problem by asserting that the alleged fraudulent backdating of the 56 percent retainer agreement "had the *effect* of replacing the 38% Retainer Agreement" while the CNMI probate case was still open. (Opp. at 22) (emphasis added). Thus, Plaintiff argues, Defendants' acts were "expressly aimed at circumventing the authority originating from the CNMI Probate Case to approve attorney fees . . ." (*Id.* at 26). In support, Plaintiff cites authority for the proposition that a court has jurisdiction over a party "whose only 'contact' with the forum is the 'purposeful direction' of a foreign act having an effect in the forum state." (*Id.* at 20) (quoting *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir. 1986)). In *Haisten,* the defendant, a medical malpractice insurance fund, had taken deliberate measures to avoid the appearance of doing business in California, the forum state, or anywhere else than the Cayman Islands, where it maintained its sole office. *Haisten,* 784 F.2d at 1395. The fund did "everything 'humanly possible' to avoid the benefits and protections of California's laws." *Id.* at 1397. The court found that despite the formal barriers the fund had erected to contact with the forum state, its outside-the-forum activities were in point of fact purposely directed to the California insurance market. *Id.* at 1398. Junior sees defendants Israel and Lujan as acting similarly to the insurance fund in *Haisten* – purposefully avoiding physical acts within the CNMI yet all the while directing their nefarious activity thereto.

The problem with this argument is that Junior Hillbroom, not the CNMI probate court, is the plaintiff and the injured party.  In *Haisten,* the plaintiff, his deceased wife, and the insured doctor who injured her were all residents of the forum state, California.  *Id.* at 1395, 1406.  As shown above, there is no evidence that Junior Hillbroom ever resided in the CNMI.

Because Junior has failed to sustain his burden on the second part of the effects test, he has failed to show purposeful direction, the first step of the specific-jurisdiction analysis.  Having "fail[ed] at the first step, the jurisdictional inquiry ends and the case must be dismissed."  *Boschetto,* 539 F.3d at 1016.  The remaining two prongs need not be addressed.  *See Pebble Beach,* 453 F.3d at 1155.

### IV.   Conclusion

For the foregoing reasons, Israel's motion to dismiss the case against him is hereby GRANTED pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  The Court does not decide Israel's other asserted defenses.

SO ORDERED this 26th day of January, 2012.

                                                        RAMONA V. MANGLONA
                                                        Chief Judge